UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

DAVID ROBINSON,

    Plaintiff,

  v.                                                                               Case No. 21-CV-238-SCD

KILOLO KIJAKAZI,
**Acting Commissioner of Social Security,**

    Defendant.

---

## DECISION AND ORDER

---

    David Robinson applied for social security disability benefits based on several physical impairments including obesity. After a hearing, an administrative law judge (ALJ) denied Robinson's claim, finding that although his obesity (when combined with his other impairments) caused some limitations, he was still able to work. Robinson seeks judicial review of that decision, arguing that the ALJ did not evaluate his obesity in accordance with the Social Security Administration's (SSA) own policies. He also contends that he is entitled to a new hearing because the structure for removing the Commissioner of the SSA violates the United States Constitution. Kilolo Kijakazi, Acting Commissioner of the SSA, maintains that the ALJ did not commit reversible error in denying Robinson's claim, substantial evidence supports the ALJ's decision, and Robinson is not entitled to relief on his constitutional claim. I agree with Kijakazi on each point; thus, I will affirm the denial of disability benefits.

## BACKGROUND

Robinson was born on April 25, 1966. R. 161.[1] He grew up in Adams Friendship, Wisconsin, with his parents and his four siblings. R. 464. After graduating high school, Robinson joined the Wisconsin National Guard, where he worked as a truck driver for three years before being honorably discharged. He then met his current wife, Debra; had a daughter; and spent several years working as a truck driver for various agencies. R. 465. More recently, he worked as a cement truck operator and an assembly line worker in a factory. R. 41–45, 204.

In October 2018, Robinson applied for disability insurance benefits, alleging that he became disabled on May 21, 2011, due to diabetes, a curved spine, shoulder issues, high blood pressure, and high cholesterol. R. 18, 161–64, 202. The Social Security Commissioner denied the application at the initial level of state-agency review, finding that Robinson did not have any medical records for the relevant period. R. 63–69. In support of his request for reconsideration, Robinson asserted that he was in more pain everywhere, he had pain in his joints and muscles, he had more vertigo, he was unable to look up, and he got dizzy and fell. *See* R. 82, 84–88, 223. He further asserted that he couldn't stand or sit for very long due to lower back pain; his vertigo caused constant dizziness and instability; his diabetes resulted in blurry vision; and, since suffering a stroke, he had numbness and tingling in his arms and legs, he had pain in his neck and back, and his knees and ankles would give out and he would fall. *See* R. 228–35. Despite these additional allegations, the Commissioner denied the disability application at the reconsideration level, again for lack of supporting evidence. *See* R. 70–81. Robinson appealed for a hearing before an ALJ. *See* R. 104.

---

[1] The transcript is filed on the docket at ECF No. 16-3 to ECF No. 16-15.

On May 12, 2020, ALJ Joseph Jacobson held an evidentiary hearing on Robinson's disability application. *See* R. 34–62. Robinson's lawyer at the hearing amended his alleged onset date of disability to the day before Robinson's fiftieth birthday, April 24, 2016. R. 18, 39. The lawyer also acknowledged that, while the medical record was sparse, there was enough to establish severe impairments of degenerative disc disease, depression, diabetes, scoliosis, obesity, a shoulder impingement, and vertigo R. 39–40. According to the lawyer, those impairments limited Robinson to unskilled work at the light exertional level, with additional restrictions ambulating, for postural issues, reaching and handling, avoiding assembly-line work, and needing unscheduled breaks and time off task. R. 40.

Robinson testified at the hearing. *See* R. 41–54. After recounting his work history, Robinson indicated that he was unable to work due to severe pain, shoulder issues, and numbness in his hands. Robinson told the ALJ that he experienced back pain that radiated down both legs from prolonged standing or sitting. He also told the ALJ that his diabetes made him feel fatigued, his medications caused him to feel drowsy, he was extremely dizzy on account of vertigo, and he could lift no more than twenty pounds.

The ALJ also heard testimony from a vocational expert. *See* R. 54–61. The vocational expert testified that a hypothetical person with Robinson's age (fifty-four years old at the time of the hearing), education (a high school diploma), and work experience (as a packer and cement truck driver) could not perform his past relevant jobs if he was limited to a restricted range of light work. That person could, however, work as a housekeeper/cleaner, a sales attendant, and an office helper. According to the vocational expert, if that same person also needed to alternate between sitting and standing as needed, he could instead work as an assembler, an inspector, and a hand packager.

Applying the standard five-step analysis, *see* 20 C.F.R. § 404.1520(a)(4), on May 27, 2020, the ALJ issued a written decision finding that Robinson was not disabled, *see* R. 15–33. The ALJ determined that Robinson met the insured status requirements of the Social Security Act through June 30, 2017, meaning Robinson had to demonstrate that he was disabled during the narrow time frame from his amended alleged onset date (April 24, 2016) to his date last insured (June 30, 2017). R. 18–20. At step one, the ALJ determined that Robinson did not engage in substantial gainful activity during that time. R. 21. The ALJ determined at step two that Robinson had three severe impairments: cervical spondylosis, obesity, and benign paroxysmal positional vertigo. R. 21–23. At step three, the ALJ determined that Robinson did not have an impairment, or a combination of impairments, that met or medically equaled the severity of a presumptively disabling impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (i.e., "the listings"). R. 23–24. The ALJ noted that, during the relevant period, Robinson weighed 284 pounds and was 5'7" tall, which equated to a body-mass index (BMI) of 44.5. R. 23 (citing Exhibit 13F, page 19 [R. 581]). Nevertheless, according to the ALJ, "there [was] no indication that [Robinson's] obesity, alone or in combination with any other impairment, [had] given rise to a condition of listing-level severity." R. 24.

The ALJ next assessed Robinson's residual functional capacity (RFC)—that is, his maximum capabilities despite his limitations, *see* 20 C.F.R. § 404.1545(a). The ALJ found that Robinson had the RFC to perform a restricted range of light work. R. 24. The ALJ accounted for Robinson's obesity, neck pain, and ability to lift at most twenty pounds by limiting him to light work and occasional stooping and crouching. R. 26. The ALJ limited Robinson to occasional overhead reaching with the right arm to account for his issues with his right upper

extremity. And the ALJ found that Robinson's vertigo "would prevent him from climbing ladders, ropes, or scaffolds, being exposed to hazards, or working in jobs that involve fast-moving assembly lines." R. 26. In assessing that RFC, the ALJ considered Robinson's subjective allegations, the medical evidence, and the medical opinion evidence and prior administrative findings. *See* R. 24–26. The ALJ also again noted that Robinson "was . . . morbidly obese, with a BMI of 44.5." R. 25 (citing Exhibit 13F, page 19 [R. 581]).

The ALJ then continued with the sequential evaluation process. At step four, the ALJ determined that Robinson was not able to perform any past relevant work. R. 26. The ALJ determined at step five that there were jobs that existed in significant numbers in the national economy that Robinson could perform. R. 26–27. Relying on the vocational expert's testimony, the ALJ mentioned three examples: housekeeper/cleaner, sales attendant, and office helper. Based on those findings, the ALJ determined that Robinson was not disabled at any time from his amended alleged onset date through the date last insured. R. 28.

The SSA's Appeals Council denied Robinson's request for review, R. 1–6, making the ALJ's decision a final decision of the Commissioner of the SSA, *see Loveless v. Colvin*, 810 F.3d 502, 506 (7th Cir. 2016).

On February 22, 2021, Robinson filed this action seeking judicial review of the Commissioner's final decision denying his claim for social security disability benefits under the Social Security Act, 42 U.S.C. § 405(g). *See* ECF No. 1. The matter was reassigned to me after all parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c) and Fed.

5

R. Civ. P. 73(b). *See* ECF Nos. 4, 7, 8. It is now fully briefed and ready for disposition. *See* ECF Nos. 22, 23, 24.[2]

## APPLICABLE LEGAL STANDARDS

"Judicial review of Administration decisions under the Social Security Act is governed by 42 U.S.C. § 405(g)." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010)). Pursuant to sentence four of § 405(g), federal courts have the power to affirm, reverse, or modify the Commissioner's decision, with or without remanding the matter for a rehearing. A reviewing court will reverse a Commissioner's decision "only if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020) (citing *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)).

"Substantial evidence is not a demanding requirement. It means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Martin*, 950 F.3d at 373 (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)). In reviewing the record, this court "may not re-weigh the evidence or substitute its judgment for that of the ALJ." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Rather, I must determine whether the ALJ built an "accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (citing *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001)).

---

[2] All subsequent citations to the parties' briefs are to the pages in the original document, not the page numbers provided by CM/ECF.

## DISCUSSION

In his brief, Robinson raises two potential grounds for relief. First, he argues that the ALJ committed legal error in evaluating his obesity. Second, he argues that his disability claim should be remanded for a new hearing because the denial of benefits resulted from a constitutionally defective adjudicative process.

### I. Obesity

Robinson maintains that the ALJ did not follow Social Security Ruling 19-2p when assessing how his obesity impacted his RFC. Specifically, Robinson contends that the ALJ didn't analyze the aggravating effects of Robinson's obesity and failed to explain how he considered Robinson's obesity in combination with his other impairments. Kijakazi argues that the ALJ adequately considered and accommodated Robinson's obesity and that any error in evaluating Robinson's obesity is harmless because Robinson has not identified any greater limitations that were warranted or explained how his obesity exacerbated his other impairments.

"[W]hile obesity is no longer a standalone disabling impairment, the ALJ must still consider its impact when evaluating the severity of other impairments." *Stephens v. Berryhill*, 888 F.3d 323, 328 (7th Cir. 2018) (citing *Brown v. Colvin*, 845 F.3d 247, 251 (7th Cir. 2016)). This is so because "[t]he combined effects of obesity with another impairment[] may be greater than the effects of each of the impairments considered separately." Social Security Ruling 19-2p, Policy Interpretation Ruling Titles II and XVI: Evaluating Cases Involving Obesity, 2019 WL 2374244, 2019 SSR LEXIS 2, at *13 (May 20, 2019). According to SSR 19-2p, an ALJ "must consider the limiting effects of obesity when assessing a person's RFC," and "will explain how [he] reached [his] conclusion on whether obesity causes any

7

limitations." *Id.* at *12. However, an ALJ's failure to adequately consider the limiting effects of a claimant's obesity is harmless if the claimant "does not identify any evidence in the record that suggests greater limitations from [his] obesity than those identified by the ALJ," *Shumaker v. Colvin*, 632 F. App'x 861, 867–68 (7th Cir. 2015) (citing *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006); *Skarbek*, 390 F.3d at 504, or if "the record does not suggest that [the claimant's] treating physicians discussed [his] weight in any detail," *Stepp v. Colvin*, 795 F.3d 711, 720 (7th Cir. 2015) (citations omitted).

The ALJ here did not commit reversible error in evaluating Robinson's obesity. The ALJ determined at step two that Robinson's obesity constituted a severe impairment, recognizing that it significantly limited his ability to do basic work activities, 20 C.F.R. § 404.1520(c). R. 21. At step three, the ALJ noted that Robinson had a BMI of 44.5 during the relevant period and explicitly mentioned SSR 19-2p when finding that Robinson's obesity, alone or in combination with his other impairments, did not satisfy the criteria of any presumptively disabling impairment. R. 23–24. And later, when assessing Robinson's RFC, the ALJ again mentioned that Robinson was morbidly obese, R. 25, and explained that he limited Robinson to light work with only occasional stooping and crouching to account for his obesity, neck pain, and issues lifting, R. 26. The ALJ therefore considered the limiting effects of Robinson's obesity and explained how Robinson's obesity, in combination with his other impairments, limited his ability to work.

To the extent the ALJ erred in evaluating obesity, that error is harmless because Robinson does not explain how his obesity, in combination with his other impairments, impacted his ability to work. In his reply brief, Robinson suggests that his obesity would increase symptoms relating to his diabetes, vertigo, loss of balance, and poor energy. *See* ECF

8

No. 24 at 5. Robinson, however, does not cite *any* treatment notes or medical opinion supporting this assertion. And the medical records—while frequently noting Robinson's obesity—do not discuss his weight in detail or document any resulting functional limitations, aside from the fact that he needed to lose weight. *See* R. 380, 385, 390, 394, 396, 481, 501, 624–25, 643, 651, 656–58, 661, 672–74, 678, 682–84, 687, 702, 709–12, 717, 729, 731–33, 736, 742, 745–47, 749, 755–57, 759, 779–80, 800, 811, 814–15, 836–37, 840, 842, 951, 953–55, 957, 959, 961, 963. Robinson also suggests that, if the ALJ had properly considered obesity, he may have concluded that Robinson was no longer able to work due to pain or fatigue or may have included an additional walking limitation in the RFC assessment. *See* ECF No. 24 at 5. Robinson again does not support this argument with any evidence; it's also speculative.

Accordingly, Robinson has not demonstrated that the ALJ committed reversible error in evaluating his obesity.

**II.     Constitutional Claim**

Robinson maintains that the adjudication of his claim was constitutionally defective because Section 702 of the Social Security Act, 42 U.S.C. § 902, which limits the President's authority to remove the Commissioner without good cause, violates the separation of powers. Because the removal clause is unconstitutional, Robinson's theory goes, former Commissioner Andrew Saul lacked authority to delegate adjudication of this matter to others, including the ALJ and the Appeals Council. According to Robinson, "[t]his case should be remanded for a de novo hearing before a new ALJ who does not suffer from the unconstitutional taint of having previously heard and decided this case when the ALJ had no lawful authority to do so." ECF No. 22 at 17 (citing *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018)).

9

Kijakazi concedes "that 42 U.S.C. § 902(a)(3) violates the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause." ECF No. 23 at 4 (citing Office of Legal Counsel, U.S. Dep't of Justice, Constitutionality of the Commissioner of Social Security's Tenure Protection, 2021 WL 2981542 (July 8, 2021) ["OLC Op."]). In *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020), and *Collins v. Yellen*, 141 S. Ct. 1761 (2021), the Supreme Court held that limitations on the President's ability to remove the single head of an administrative agency violate the separation of powers if that person serves a term longer than the President. Like the administrative agencies at issue in *Seila Law* and *Collins*, the SSA is led by a single head (the Commissioner) who serves a term longer than the President (six years) and whom the President can remove only for cause ("neglect of duty or malfeasance in office"). *See* 42 U.S.C. § 902(a). Thus, the Social Security Act's removal clause violates the separation of powers. *See Stamm v. Kijakazi*, No. 3:20-CV-02273, 2021 U.S. Dist. LEXIS 248461, at *13–14 (M.D. Pa. Dec. 31, 2021) (finding that § 902(a)(3) violates the separation of powers under *Seila Law* and *Collins*); *Nathaniel H. v. Kijakazi*, No. 6:19-cv-01280-AA, 2021 WL 5921377, 2021 U.S. Dist. LEXIS 239561, at *11–13 (D. Or. Dec. 15, 2021) (same); *John R. v. Comm'r of Soc. Sec.*, No. C20-6176-MLP, 2021 WL 5356719, 2021 U.S. Dist. LEXIS 222318, at *15–17 (W.D. Wash. Nov. 16, 2021) (same). Kijakazi nevertheless maintains that the constitutional defect of the Act's removal clause does not support setting aside the denial of benefits in this case. I agree.[3]

---

[3] Though the parties do not contest the issue, I find that Robinson has standing to bring his constitutional claim. *See, e.g., Collins*, 141 S. Ct. at 1778–79 (finding that standing was satisfied in a similar constitutional challenge); *see also Dante v. Saul*, No. 20-0702 KBM, 2021 WL 2936576, 2021 U.S. Dist. LEXIS 130127 (D.N.M. July 13, 2021) (finding that a disability claimant had standing to challenge the constitutionality of the Social Security Act's removal clause).

As a preliminary matter, Robinson did not raise his constitutional claim in his complaint. Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although a complaint "does not need detailed factual allegations," the "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must provide the defendant "fair notice of the nature of the claim" and the "grounds on which the claim rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 & n.3 (2007) (citations and internal quotation marks omitted). The complaint here simply alleges that "[t]he conclusions and findings of fact of the defendant are not supported by substantial evidence and are contrary to law and regulation." ECF No. 1. While that allegation may be sufficient in an ordinary social security case, it does not give any notice, let alone fair notice, of a constitutional claim like the one Robinson raises in his briefs. The complaint therefore does not comply with Rule 8. *See Bowers v. Comm'r of Soc. Sec.*, No. 2:20-cv-6024, 2022 U.S. Dist. LEXIS 778, at *17–18 (S.D. Ohio Jan. 4, 2022) (rejecting the same separation-of-powers argument raised here in part on procedural grounds and citing other district courts that have done the same).

Robinson's constitutional claim also fails on its merits, for at least three reasons.[4] *First*, the removal clause in § 902(a)(3) is severable from the rest of the Social Security Act. A majority of the justices who decided *Seila Law* agreed that the removal protection of the

---

[4] Kijakazi argues that Robinson's constitutional claim fails for an additional reason: the ALJ who denied Robinson's disability claim was appointed by an individual who was not subject to the Social Security Act's removal clause. *See* ECF No. 23 at 4–8. Several district courts have found the constitutionality of § 903(a)(3) to be irrelevant where the ALJ (like the one in this case) was appointed by an *Acting* Commissioner of the SSA. *See, e.g.*, *Bowers*, 2022 U.S. Dist. LEXIS 778, at *19–20 (colleting cases). However, others have determined that the language of the removal clause "is broad enough to encompass an Acting Commissioner." *Tafoya v. Kijakazi*, No. 21-cv-00871-REB, 2021 WL 3269640, 2021 U.S. Dist. LEXIS 142283, at *11 (D. Colo. July 29, 2021) (citing *Dante*, 2021 U.S. Dist. LEXIS 130127, at *21–22). I need not weigh in on this debate, as there are other, more compelling reasons to reject Robinson's constitutional claim.

11

Director of the Consumer Financial Protection Bureau (CFPB) was severable from the other provisions of the Dodd-Frank Wall Street Reform and Consumer Protection Act that establish the CFPB and define its authority. *See Seila Law*, 140 S. Ct. at 2207–11, 2245.[5] Thus, "the CFPB may continue to exist and operate notwithstanding Congress's unconstitutional attempt to insulate the agency's Director from removal by the President." *Id.* at 2207–08; *see also Collins*, 141 S. Ct. at 1788 n.23 ("Settled precedent also confirms that the unlawfulness of the removal provision does not strip the Director of the power to undertake the other responsibilities of his office.") (citing, e.g., *Seila Law*, 140 S. Ct. 2183).

The same is true with respect to the SSA. Because the Social Security Act does not contain an inseverability clause, the SSA would remain fully functional if the removal clause in § 902(a)(3) is erased. *See Bowers*, 2022 U.S. Dist. LEXIS 778, at *20–21 (finding § 902(a)(3) severable from the rest of the Social Security Act and citing other district-court cases holding the same); *see also* OLC Op., 2021 WL 2981542 (concluding that the unconstitutional removal clause does not affect the validity of the remainder of the Social Security Act). Therefore, the unconstitutional removal clause "would not have deprived former Commissioner Saul of the ability to delegate power to others to decide [Robinson's] claim." *Bowers*, 2022 U.S. Dist. LEXIS 778, at *20–21 (citing *Butcher v. Comm'r of Soc. Sec.*, No. 2:20-cv-6081, 2021 WL 6033683, 2021 U.S. Dist. LEXIS 242772, at *20–21 (S.D. Ohio Dec. 21, 2021)).

*Second*, the unconstitutional removal clause in § 902(a)(3) does not automatically taint all actions taken by the SSA during Saul's tenure. In *Collins*, the Supreme Court found that

---

[5] *Seila Law* is a fractured opinion. Chief Justice Roberts delivered the lead opinion. Justices Alito and Kavanaugh joined Chief Justice Roberts on the severability issue. Justice Kagan wrote separately to concur in the judgment with respect to severability and to dissent in part; that opinion was joined by Justices Ginsburg, Breyer, and Sotomayor. Justices Thomas and Gorsuch dissented on the severability issue. So seven of the nine justices agreed that, "*if* the agency's removal provision is unconstitutional, it should be severed." *Seila Law*, 140 S. Ct. at 2245 (Kagan, J., concurring in judgement with respect to severability and dissenting in part).

the defective removal procedure contained in the Housing and Economic Recovery Act of 2008 did not render the actions of the Federal Housing Finance Agency (FHFA) void from the outset:

> Although the statute unconstitutionally limited the President's authority to *remove* the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the FHFA in relation to the [challenged action] as void.

*Collins*, 141 S. Ct. at 1787. *Collins* therefore flatly contradicts Robinson's argument that the Commissioner's appointment is irrelevant to his constitutional challenge. Because Robinson does not allege a constitutional defect in the method of appointment of former Commissioner Saul, Saul's delegation of authority to decide Robinson's disability claim is not automatically—or, to use Robinson's term, presumptively—invalid. *See, e.g.*, *John R.*, 2021 U.S. Dist. LEXIS 222318, at *17 ("[T]he removal provision does not render the Commissioner's appointment invalid, and thus does not automatically void the SSA's actions under the Commissioner."); *see also Bowers*, 2022 U.S. Dist. LEXIS 778, at *23 (rejecting the plaintiff's argument that harm should be presumed under the same circumstances presented here).

*Third*, Robinson has not demonstrated a causal link between the unconstitutional removal clause in § 903(a)(3) and his alleged injuries. In *Collins*, the Supreme Court indicated that it was "possible for an unconstitutional provision to inflict compensable harm," and the Court remanded the matter for further proceedings to determine whether the President's inability to remove the Director of the FHFA except for cause harmed the challengers. *Collins*, 141 S. Ct. at 1788–89. "The court in Collins suggested that harm could be fairly traced to the removal provision where 1) the commissioner played a role in the agency action and 2) the

13

president would have removed the commissioner to prevent the action but-for the removal provision." *Roth v. Kijakazi*, No. 20-cv-1077-jdp, 2021 WL 6062062, 2021 U.S. Dist. LEXIS 243983, at *15 (W.D. Wis. Dec. 22, 2021) (citing *Collins*, 141 S. Ct. at 1789).

Robinson has not shown compensable harm in his case. He does not allege that the official who headed the SSA while his disability claim was pending—former Acting Commissioner Nancy Berryhill, former Commissioner Saul, or current Acting Commissioner Kijakazi—played any role in deciding his claim. Nor does he allege that President Biden or Trump would have intervened to stop the Commissioner from acting but-for the unconstitutional removal clause in § 903(a)(3). And it is unlikely he could. *See Collins*, 141 S. Ct. at 1802 (Kagan, J., concurring) ("[G]iven the majority's remedial analysis, I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone. . . . When an agency decision would not capture a President's attention, his removal authority could not make a difference."). Instead, Robinson alleges that, "but for the unlawful delegation of authority to this ALJ and the Appeals Council judges, those government actors could not have adjudicated and issued the adverse determinations which they did in this case." ECF No. 24 at 12–13.[6] That allegation, however, rests on the false premise, rejected in *Collins,* that the unconstitutional removal clause somehow taints all the Commissioner's actions, including his delegation of authority to others to decide individual disability claims. *See Nathaniel H.*, 2021 U.S. Dist. LEXIS 239561, at *15–16 ("But, as explained above, the unconstitutional nature of the removal restriction in section 902(a)(3) did not automatically

---

[6] Robinson argues that Kijakazi "offers no defense whatsoever for the constitutionally illicit actions of its Appeals Council" and therefore waived the issue. ECF No. 24 at 8–9. He's mistaken. Kijakazi explicitly said that Robinson "cannot conceivably show that the President's supposed inability to remove the Commissioner without cause affected the Appeals Council's denial of review of his specific claim." ECF No. 23 at 10 n.7. That response is brief, but so too was Robinson's initial argument: "All of this is just as true with respect to SSA's Appeals Council judges." ECF No. 22 at 11.

14

invalidate the actions taken by the Acting Commissioner or the SSA during the Acting Commissioner's tenure."). Robinson therefore has not alleged any connection between the unconstitutional limit on the Commissioner's removal and the adjudication of his disability claim.

Finally, I note that Robinson does not cite any decision from another court addressing the constitutionality of § 902(a)(3). Probably for good reason. Every court that has addressed the merits of Robinson's constitutional claim has rejected it. *See, e.g.*, *Schwechel v. Kijakazi*, No. 20-cv-700-wmc, 2022 U.S. Dist. LEXIS 7438, at *15–16 (W.D. Wis. Jan. 14, 2022) (noting that no district court had credited the plaintiff's constitutional claim as of the date of that decision); *see also Ramos v. Comm'r of Soc. Sec.*, No. 1:20-cv-01606-EPG, 2022 WL 105108, 2022 U.S. Dist. LEXIS 5721, at *7 (E.D. Cal. Jan. 10, 2022) (collecting cases).

In sum, while the removal clause in § 902(a)(3) violates the separation of powers, that finding does not require me to reverse the Commissioner's decision in this case and remand the matter to a new ALJ for a *de novo* hearing.[7]

## CONCLUSION

For all the foregoing reasons, I find that Robinson has not demonstrated that the ALJ committed reversible error in evaluating his obesity, substantial evidence supports the ALJ's decision, and Robinson is not entitled to relief on his constitutional claim. Thus, I **AFFIRM** the Commissioner's decision. The clerk of court shall enter judgment accordingly.

---

[7] Because I find that Robinson's constitutional claim lacks merit for the above reasons, I do not need to address Kijakazi's alternative arguments (i.e., harmless error, *de facto* officer, the rule of necessity, and other prudential considerations).

15

**SO ORDERED** this 14th day of February, 2022.

_____
STEPHEN C. DRIES
United States Magistrate Judge